UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Carlton J. Edwards, individually and
on behalf of all other similarly situated
individuals,

        Plaintiff,

v.                                          Case No. 0:10-cv-02826-MJD-JJK

Multiband Corporation,

        Defendant.

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR CONDITIONAL CLASS CERTIFICATION AND COURT-AUTHORIZED NOTICE**

---

**INTRODUCTION**

    The cable and satellite industry is rampant with allegations of wage and hour violations.[1] The technicians are usually paid on a "piece rate basis," receiving only the

---

[1] See, e.g., Bowman v. New Vision Telecommc'ns, No. 09-cv-01115 (M.D. Tenn.) (conditionally certifying a case involving W2 and 1099 technicians); Johnson v. ECT Contracting, LLC., 2010 WL 625390, at *4 (M.D. Tenn. Feb. 18, 2010) (granting conditional certification to DirecTV satellite installers); Monroe v. FTS USA, LLC, 257 F.R.D. 634, 639 (W.D. Tenn. 2009) (finding plaintiffs and the other cable installers were similarly situated under the FLSA's lenient notice standard); Brasfield v. Source Broadband Servs., LLC, 255 F.R.D. 447 (W.D. Tenn. 2008) (granting nationwide certification to all cable installers); Musarra v. Digital Dish, Inc., 2008 WL 818692, at *2 (S.D. Ohio Mar. 24, 2008) (finding conditional certification appropriate based on the pleadings and affidavits submitted by the plaintiff satellite technicians); Kautsch v. Premier Commc'ns, 504 F. Supp. 2d 685, 690 (W.D. Mo. 2007) (conditionally certifying the case involving DirecTV satellite installer who were paid according to the same piece-

amount of money that is assigned to each task or job they complete, and denied an overtime premium for all of the overtime hours they work as a result of the defendant's unlawful compensation structure.

This is an overtime lawsuit brought under the federal Fair Labor Standards Act ("FLSA") by satellite technicians who perform DirecTV installation and maintenance work for Defendant Multiband Corporation ("Multiband"). Plaintiff alleges that Multiband created a business model in which it contracted with small companies to give the appearance of "clean hands" and avoid its obligations to pay its workforce properly under the law.[2] Multiband cannot have it both ways by obtaining the benefit of Plaintiffs' work, but escaping the obligations of being their employer.

Because the initial similarly situated inquiry does not engage in the merits of the litigation, courts commonly certify cases as FLSA collective actions without deciding the legal nature of the working relationship or whether the defendant in fact employed the plaintiffs.[3]  Instead, the Court must simply determine whether Plaintiff has met his

---

rate procedure, had the same work week and hourly schedule, and subject to the same policies).

[2] According to Defendant, these contracting companies have employees and independent contractors who perform Multiband's installation and technician services. (Dkt. 19.) Regardless of whether the contracting company issued the technicians a form W2 or a 1099 form, whether Multiband is their "employer" for purposes of the FLSA is the common thread amongst all of the technicians, and is not a question for this Court at this early stage.

[3] Courts around the country have routinely conditionally certified cases involving the defendant's status as an FLSA "employer" without deciding the merits of the case. See, e.g., Johnson, 2010 WL 625390, at *1 (granting conditional certification to DirecTV satellite installers who were classified as "independent contractors"); Harris v. Vector Mktg. Corp., 2010 WL 1998768, at *5 (N.D. Cal. May 18, 2010) (conditionally certifying a class because there was "no real dispute that the plaintiffs and putative class

burden to establish that there is a group of similarly situated workers who deserve to be notified of this lawsuit. Court-authorized notice should issue because Plaintiff has unquestionably met this burden.

## FACTUAL BACKGROUND

**A.      The Parties**

Defendant Multiband Corporation ("Multiband") is a domestic corporation with its principal place of business in New Hope, Minnesota. (Compl. at 2, ¶ 4; Ans. at 2, ¶ 4.) Multiband is in the business of installing and maintaining video services for DirecTV satellite television subscribers. (Compl. at 2, ¶ 4; Ans. at 2, ¶ 4.) Multiband handles approximately twenty percent (20%) of DirecTV's installation, maintenance, and upgrades for DirecTV subscribers. See http://www.multibandusa.com/home (last visited Nov. 3, 2010). Multiband is the second largest full service Home Service Provider for DirecTV, operating in approximately sixteen (16) states. (Compl. at 2, ¶ 4; Ans. at 2, ¶ 4.)

---

members performed the same duties and that the defendant categorically classified them as independent contractors"); McCaffrey v. Mortg. Sources, Corp., 2009 WL 2778085, at *3 (D. Kan. Aug. 27, 2009) (finding that the allegations in the complaint and the supporting declarations suggest that plaintiffs who were loan officers treated as independent contractors held similar positions and received no overtime pay); Labrie v. UPS Supp. Chain Solutions, Inc., 2009 WL 723599, at *6 (N.D. Cal. Mar. 18, 2009) (certifying a case consisting of 2500 "independent contractor" drivers who worked in 45 states); Houston v. URS Corp., 591 F. Supp. 2d 827, 834 (E.D. Va. Dec. 17, 2008) (granting conditional certification because the plaintiffs had sufficiently alleged that they were all classified as independent contractors rather than employees, and were paid in a similar manner on a "per inspection basis"); Lima v. Int'l Catastrophe Solutions, 493 F. Supp. 2d 793, 800 (E.D. La. June 27, 2007) (certifying a class of workers under the lenient notice standard despite defendant's arguments against being a joint employer).

Multiband's Home Service Provider segment includes approximately 2,000 technicians who perform satellite and maintenance services for the DirecTV subscribers. (Compl. at 2, ¶ 4; Ans. at ¶ 2.)  Named Plaintiff Carlton Edwards is one of these technicians.  (Compl. at 2, ¶ 3; Edwards Decl. ¶ 2.)[4]  Edwards worked as a satellite technician for Multiband from approximately October 2008 until May 2010 through Megatek, Inc., a small company that contracts with Multiband.  (Edwards Decl. ¶ 2; Ans. at 2, ¶ 3.)  Edwards filed this lawsuit on behalf of himself and other "similarly situated" individuals pursuant to § 216(b) of the Fair Labor Standards Act.  (Compl. at 2, ¶ 5.) Plaintiff and the similarly situated individuals worked as installers/technicians of DirecTV satellite television services for Multiband at any time from three years prior to the filing of the Complaint to the entry of judgment in this action.  (Id.)  As of the date of this motion, nine (9) other satellite technicians have joined Edwards by filing opt-in consent forms with this Court.  (See Dkts. 3, 8, 9, 10, 13, 14, 15, 16, 17.)

Edwards alleges that Multiband operated a scheme to avoid paying overtime compensation to satellite technicians, workers who performed services essential to its business operations.  (Compl. at 3, ¶¶ 3, 4.)  Edwards alleges that Multiband knew or should have known that he and the similarly situated technicians were "employees" within the meaning of the FLSA, § 203(d).  (Id. at 2, ¶5.)

---

[4] Named Plaintiff Carlton Edwards's declaration is attached as Exhibit B to the Declaration of Rachhana T. Srey.

**B.      Satellite Technicians Perform Similar Job Duties and Are Paid the Same**

Edwards and the similarly situated individuals worked in the same job position as a satellite technician. (See Compl.; Edwards Decl. ¶ 2; Bragg Decl. ¶ 2; Colvin Decl. ¶ 2; D. Drewer Decl. ¶ 2; L. Drewer Decl. ¶ 2; Mark Decl. ¶ 2; Markwalter Decl. ¶ 2; McClish Decl. ¶ 2; Smith Decl. ¶ 2.)[5]  A technician's primary job responsibility is to install, repair, or service satellite equipment for DirecTV's subscribers. (Edwards Decl. ¶ 3; Bragg Decl. ¶ 3; Colvin Decl. ¶ 3; D. Drewer Decl. ¶ 3; L. Drewer Decl. ¶ 3; Mark Decl. ¶ 3; Markwalter Decl. ¶ 2; McClish Decl. ¶ 3; Smith Decl. ¶ 3.)  Satellite technicians share the same job duties and responsibilities regardless of their work location or which of Multiband's contracting companies they worked through. (Id.)

All technicians are compensated in the same manner. Regardless of which state they work in or which contracting company they work with, all technicians are paid on a piece rate basis. (Edwards Decl. ¶ 6; Bragg Decl. ¶ 6; Colvin Decl. ¶ 6; D. Drewer Decl. ¶ 6; L. Drewer Decl. ¶ 6; Mark Decl. ¶ 6; Markwalter Decl. ¶ 6; McClish Decl. ¶ 6; Smith Decl. ¶ 6.) Under the piece rate system, the satellite technicians are paid a certain amount of amount of money for each type of service or job completed. (Id.)  The piece rate amount assigned to each task remains the same regardless of the number of hours the technicians work. (Id.)

---

[5] Richard Bragg, Dustin Drewer, Larry Drewer II, Quan Mark, Jack Markwalter, Kenny McClish, and Joe Smith are § 216(b) "opt-in" plaintiffs. Jonathan E. Colvin is not an opt-in plaintiff. He is a satellite technician who completed Multiband's work orders in south New Jersey area. (See Colvin Decl. ¶ 3.) These declarations are attached as Exhibit C to the Declaration of Rachhana T. Srey.

## C. **Multiband Schedules, Monitors, and Audits Technicians' Work, and Subjects Technicians to Similar Policies and Procedures**

Plaintiff and the putative class members' piece work is commonly scheduled and dictated by Multiband. (Edwards Decl. ¶ 8; Bragg Decl. ¶ 8; Colvin Decl. ¶ 8; D. Drewer Decl. ¶ 8; L. Drewer Decl. ¶ 8; Mark Decl. ¶ 8; Markwalter Decl. ¶ 8; McClish Decl. ¶ 8; Smith Decl. ¶ 8.) Specifically, Multiband assigns specific timeframes in which Plaintiff and the other technicians are required to complete each job and requires them to report to their first job by a specific time each day. (Id.)

Further, Multiband employs the same process and procedure for monitoring the technicians during the workday. For example, all technicians are required to check in and report to Multiband's "trackers" or "dispatchers"[6] in order for Multiband to keep track of the technicians' whereabouts and the status of their work orders. (Edwards Decl. ¶ 8; Bragg Decl. ¶ 8; Colvin Decl. ¶ 8; D. Drewer Decl. ¶ 8; L. Drewer Decl. ¶ 8; Mark Decl. ¶ 8; Markwalter Decl. ¶ 8; McClish Decl. ¶ 8; Smith Decl. ¶ 8.)

Plaintiff and the putative class members have their work audited by Multiband to ensure that they are completing their work according to company policies and procedures and may be subjected to "back charges" or deductions for a variety of reasons. (Compl. ¶ 5; Edwards Decl. ¶ 9; Bragg Decl. ¶ 9; Colvin Decl. ¶ 9; D. Drewer Decl. ¶ 9; L. Drewer Decl. ¶ 9; Mark Decl. ¶ 9; Markwalter Decl. ¶ 9; McClish Decl. ¶ 9; Smith Decl. ¶ 9.) In addition to following company specifications for their actual piece rate jobs,

---

[6] Multiband describes the job duties of a tracker/dispatcher as assisting installation technicians with information on work orders and tracking their status and location throughout the day. (Ex. D.)

technicians are also subjected to other company requirements. For example, technicians are required to attend training sessions at Multiband's offices and/or attend meetings to remain updated on policies and procedures. (Edwards Decl. ¶ 5; Bragg Decl. ¶ 5; Colvin Decl. ¶ 5; D. Drewer Decl. ¶ 5; L. Drewer Decl. ¶ 5; Mark Decl. ¶ 5; Markwalter Decl. ¶ 5; McClish Decl. ¶ 5; Smith Decl. ¶ 5.)

**D.     Technicians Work Long Hours Without Overtime Compensation**

As a satellite technician, Plaintiff and the putative class members work similar schedules. Indeed, they are regularly scheduled to work six days per week, putting in well over forty (40) hours during the workweek. (Edwards Decl. ¶ 7; Bragg Decl. ¶ 7; D. Drewer Decl. ¶ 7; L. Drewer Decl. ¶ 7; Mark Decl. ¶ 7; McClish Decl. ¶ 7; Smith Decl. ¶ 7.)

Despite working these long hours, technicians receive no overtime compensation. (Id.) Finally, because of these long hours, the work orders Plaintiff and the other technicians completed are exclusively Multiband's work orders. (Edwards Decl. ¶ 10; Bragg Decl. ¶ 10; Colvin Decl. ¶ 10; D. Drewer Decl. ¶ 10; L. Drewer Decl. ¶ 10; Mark Decl. ¶ 10; Markwalter Decl. ¶ 10; McClish Decl. ¶ 10; Smith Decl. ¶ 10.) Plaintiff and the putative class members did not perform their satellite technician services for any company other than Multiband. (Edwards Decl. ¶ 7; Bragg Decl. ¶ 7; Colvin Decl. ¶ 7; D. Drewer Decl. ¶ 7; L. Drewer Decl. ¶ 7; Mark Decl. ¶ 7; Markwalter Decl. ¶ 7; McClish Decl. ¶ 7; Smith Decl. ¶ 7.)

**ARGUMENT**

I.  **THE COURT SHOULD GRANT PLAINTIFF'S MOTION FOR CONDITIONAL CLASS CERTIFICATION AND COURT-AUTHORIZED NOTICE**

Plaintiff seeks conditional class certification and court-authorized notice in this collective action pursuant to the FLSA, 29 U.S.C. § 216(b). The FLSA specifically contemplates employees pursuing their claims collectively:

> [an] action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees *similarly situated*. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b) (emphasis added);[7] see Burch v. Qwest Commc'ns Int'l, 500 F. Supp. 2d 1181, 1190 (D. Minn. 2007) (permitting plaintiffs to proceed collectively through discovery because the standard for similarly situated "is low" and plaintiffs had submitted affidavits from different states alleging the same unlawful practices).

---

[7] The District of Minnesota routinely conditionally certifies FLSA collective actions. See, e.g., Lyons v. Ameriprise Fin., Inc., 2010 WL 3733565, at *1 (D. Minn. Sept. 20, 2010); Luiken v. Domino's Pizza, LLC, 2010 WL 2545875, at *1 (D. Minn. June 21, 2010); Ahle v. Veracity Research Co., 2009 WL 3103852, at *1 (D. Minn. Sept. 23, 2009); Loomis v. CUSA LLC, 257 F.R.D. 674 (D. Minn. 2009); Keef v. M.A. Mortenson Co., 2008 WL 3166302, *2 (D. Minn. Aug. 4, 2008); Brennan v. Qwest Commc'ns Int'l, Inc., 2008 WL 819773, *3 (D. Minn. Mar. 25, 2008); Roble v. Celestica Corp., 2007 WL 2669439, *4 (D. Minn. Sept. 6, 2007); Dominquez v. MN Beef Indus., Inc., 2007 WL 2422837, *2 (D. Minn. Aug. 21, 2007); Dege v. Hutchinson Tech., Inc., 2007 WL 586787, *4 (D. Minn. Feb. 22, 2007); Frank v. Gold'n Plump Poultry, Inc., 2005 WL 2240336, *5 (D. Minn. Sept. 14, 2005); Kalish v. High Tech Inst., Inc., 2005 WL 1073645, *1 (D. Minn. Apr. 22, 2005); Abduallah v. Bank of Am., No. 04-2951, Order dated Jan. 20, 2005 (D. Minn.); Wilbur v. Chase Manhattan Mortg., No. 04-3172, Order dated Dec. 22, 2004 (D. Minn.); Severtson v. Phillips Beverage Co., 141 F.R.D. 276, 279 (D. Minn. 1992).

Three important features define FLSA collective actions. First, in order to participate in a collective action, an employee must "opt in," meaning he or she must consent in writing to join the suit and their consent must be filed with the court. Lyons, 2010 WL 3733565, at *2. Second, the statute of limitations runs on each employee's claim until his or her consent to opt in is filed with the court. See Kalish v. High Tech Inst., Inc., 2005 WL 1073645, at *3, n.1 (D. Minn. Apr. 22, 2005) (noting that the statute of limitations for § 216(b) collective action claims is not tolled until the individual files a written consent to opt-in to the lawsuit) (citing Grayson v. K Mart Corp., 79 F. 3d 1086, 1106 (11th Cir. 1996)). Third, to serve the FLSA's "broad remedial purpose," district courts have the discretionary power to order notice to other potentially similarly situated employees to inform them of their right to opt in to the case. Hoffmann-La Roche, 493 U.S. at 173; see also Luiken, 2010 WL 2545875, at *3.

Court-supervised notice is the preferred method for managing the notification process for several reasons: (1) it avoids a "multiplicity of duplicative suits"; (2) it allows the court to set deadlines to advance the disposition of an action; (3) it furthers the "wisdom and necessity for early judicial intervention" in multi-party actions; (4) it prevents plaintiffs' claims from expiring under the statute of limitations; and (5) it ensures that the plaintiffs receive accurate and timely notice so they can make an informed decision on whether to join the suit. Hoffmann-La Roche, 493 U.S. at 170-173; see also Luiken, 2010 WL 2545875, at *3 (recognizing that judicial notice will promote judicial economy by minimizing the proliferation of individual lawsuits). Ultimately, the purpose of judicial notice is to give employees accurate and timely notice of a pendency

9

of the collective action so they can make an informed decision about whether to participate.  Hoffmann-La Roche, 493 U.S. at 170.

### A. The First Stage "Similarly Situated" Standard Is Low

Like most other courts around the country, this Court follows the body of case law adopting an *ad-hoc* two-step approach in determining whether a case should be certified as a collective action under § 216(b).  See, e.g., Burch, 500 F. Supp. 2d at 1186; Lyons, 2010 WL 3733565, at *2; Luiken, 2010 WL 2545875, at *2.

Having undertaken the first stage's similarly situated analysis on multiple occasions, this Court is well aware that this is the notice stage, and that the Court is determining whether a collective action should be certified for the purpose of sending judicial notice and conducting discovery.  Burch, 500 F. Supp. 2d at 1186.  "At this conditional certification stage, the plaintiffs need only come forward with evidence establishing a colorable basis for their claim that the putative class members were together victims of a single decision, policy, or plan."  Burch, 500 F. Supp. 2d at 1186; Frank, 2005 WL 2240336, at *2 (citing Severtson v. Phillips Beverage Co., 137 F.R.D. 264, 267 (D. Minn. 1991)).

"Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class."  Burch, 500 F. Supp. 2d at 1190 (recognizing that the first stage notice standard is "low"); Loomis, 257 F.R.D. 676; Dominquez v. Minn. Beef Indus., Inc., 2007 WL 2422837, at *2 (D. Minn. Aug. 21, 2007) (quoting Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1218 (11th Cir. 2001)).  At the conditional certification stage, each

10

plaintiff's employment circumstances need not be identical.  Burch, 500 F. Supp. 2d at 1187 (concluding that at the conditional certification stage, plaintiffs are not required to provide evidence that they are identically situated to putative class members in all respects);  Loomis, 257 F.R.D. 674, 677 n.4; In re RBC Rauscher Overtime Litig., 703 F. Supp. 2d 910, 963 (D. Minn. Mar. 31, 2010).  Courts usually rely on the pleadings and any affidavits submitted by the plaintiffs in granting conditional certification.  See Dege, 2007 WL 586787, at *2 (D. Minn. Feb. 22, 2007) ("Plaintiffs' affidavits establish a colorable basis for their claim that the putative class members were victims of a common practice of not compensating employees[.]"); Brennan, 2008 WL 819773, at *3 (relying on the plaintiffs' affidavits and allegations in granting conditional certification).  No factual findings or credibility determinations are made in deciding whether conditional certification should be granted.  Burch, 500 F. Supp. 2d at 1186; Dominquez, 2007 WL 2422837, at *3.

After discovery is complete and the case is ready for trial, the court may then make a second determination as to whether plaintiffs are similarly situated, usually precipitated by the defendant's motion for decertification.  Loomis, 257 F.R.D. at 676.  At this second stage, the Court has much more information upon which to make its decision and can make a factual determination based on the complete record.  Burch, 677 F. Supp. 2d at 1113; Loomis, 257 F.R.D. at 676.

### B.     Plaintiff Has Met the "Similarly Situated" Standard Required at This Early Stage of the Litigation

This case is in the very early stages. Indeed, despite having been filed many months ago, little discovery has occurred in the case. Through the allegations in Plaintiff's Complaint and the declarations submitted to support these allegations, Plaintiff has clearly provided a sufficient basis for this Court to conclude that he and putative class members are "similarly situated." All satellite technicians hold the same job position, share the same job responsibilities, and are paid in the same manner (i.e. by piece rate). No technicians have been paid overtime compensation for any of their overtime hours worked as a result of Multiband's attempt to insulate itself from liability by placing a middleman between it and the technicians.

Further, all technicians are subject to the similar company policies and procedures. For example, technicians are required to remain in constant communication with Multiband throughout the course of their workday in order for the company to keep tabs on the technicians' location and status of their work orders. Technicians are also required to train with and attend meetings with Multiband to remain updated on the company's policies and procedures. Multiband schedules and audits the technicians' work, subjecting them to back charges if their work does not meet its standards. Based on the evidence, Plaintiff has identified a group of similarly situated workers who are entitled to be promptly notified of this lawsuit. This Court should grant his motion.

### C.  Factors Outside the "Similarly Situated" Analysis Should Not Be Considered at this Notice Stage

Plaintiff anticipates that Multiband will raise arguments against court-authorized notice that have been, and should be, soundly rejected by this Court.  For example, Multiband will likely challenge Plaintiff's motion by arguing the merits of his claims.  Merits-based arguments, however, are not considered at conditional certification.  Burch, 500 F. Supp. 2d at 1186 (citing Dege, 2007 WL 586787, at *1); Lyons, 2020 3733565, at *4 (refusing to consider argument concerning the merits of plaintiff's claims on a motion for conditional certification).  Multiband may also contend that determining whether Defendant is Plaintiff's or the other technicians' "employer" is an "individualized inquiry" that should preclude conditional certification.  But, again, whether an individualized inquiry will be needed to determine the merits of Plaintiff and the putative class members' overtime claims is not considered at this stage.  See Dominguez, 2007 WL 2422837, at *3 ("[defendant's] arguments concerning 'the individualized inquiries required and the merits of Plaintiff's claims are inappropriate at this [first] stage of the proceeding"); Brennan, 2008 WL 819773, at *4 (rejecting the defendant's argument that plaintiffs were not similarly situated because of the "individualized determinations"); see also Harris, 2010 WL 1998768, at *6 (concluding that arguments about whether individualized inquiries about the level of control actually exercised under the economic realities test are better addressed at second stage certification); Labrie, 2009 WL 723599, at *6 (rejecting defendant's arguments about individualized inquiries on control factor in an independent contractor case because they go to the merits and are more appropriate for

a motion to decertify or summary judgment); McCaffrey, 2009 WL 2778085, at *4 (refusing to reach the merits of plaintiffs' claims that they were employees, not independent contractors on their motion for conditional class certification).

In sum, the case before this Court is one of those "appropriate" cases the Supreme Court contemplated when it authorized district courts to exercise discretion to manage the process of joining multiple parties in an FLSA lawsuit. See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989); see also Luiken, 2010 WL 2545875, at *3. Because Plaintiff has met his similarly situated burden, and because judicial economy is better served by court-authorized notice, this Court should grant Plaintiff's motion to issue court-authorized notice.

## II. CONTENT, FORM, METHOD, AND INFORMATION NECESSARY FOR NOTICE.

While the Supreme Court confirmed the existence of the trial court's discretion to implement § 216(b) in appropriate cases, it declined to rule on the details of its exercise, leaving it up to the trial courts to prescribe the terms and conditions of any communication from the named plaintiffs to the potential members of the class on whose behalf an FLSA collective action has been brought. Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169-170 (1989).

"Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is ***orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of***

*Civil Procedure*." Id. at 171 (emphasis added). Once Plaintiff filed this case in July 2010, this Court had the managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way. Id. at 172. "By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative." Id.

As shown above, all satellite technicians who have performed installation and maintenance services for Multiband through the various small contracting companies within the last three years are "similarly situated" for purposes of the FLSA. Thus, court-authorized notice should issue to them. Plaintiff has attached an accurate an informative proposed notice to this memorandum. (See Ex. A.) This Court should adopt Plaintiff's proposed notice and require Multiband to disclose the identities and contact information of these technicians to Plaintiff and his counsel in order to carry out the notice process. Production of a mailing list of all potential class members is routinely disclosed in FLSA collective actions that are conditionally certified. Id. at 165; Burch, 500 F. Supp. 2d at 1191. This list of putative class members should contain the last known contact information for each putative class member, including for each individual his/her name, last known address, telephone number, location of employment, identification of "contracting company," and technician identification number.

The benefits of a collective action—lower individual costs and efficient resolution of common issues of law and fact in one action—are furthered by not only a court-authorized notice being mailed, but also by posting the notice at Multiband's various field offices. Accordingly, the Court should also require Multiband to post the notice at its

various field offices around the country.  See Johnson v. ECT Contracting, LLC, No. 09-0130 (M.D. Tenn. Feb. 18, 2010) (ordering the defendant to post notice and include the notice in the alleged "independent contractors" next paycheck);[8] Garcia v. Salamanca Group, 2008 WL 818532, at *5 (N.D. Ill. Mar. 24, 2008) (authorizing notice to be sent by mail and posted at defendant's restaurants); Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474, 493 (E.D. Cal. 2006) (finding that first class mail combined with posting provided for the "best notice practicable" to the potential class); Veliz v. Cintas, Corp., 2004 WL 2623909, at *2 (N.D. Cal. Nov. 12, 2004) (requiring employer to post notice and consent forms in all of its work sites).

Finally, the Court should permit Plaintiff to send reminder letters to the putative class members before the opt-in deadline expires.  Sending reminder letters serves both to remind those persons who wish to join to do so within the notice period and to ensure that those whose notices were misplaced, not received, or opened still have a fair opportunity to join.  Reminder letters, moreover, will lower the number of late opt-ins, thus reducing the burden on the Court in deciding whether late opt-ins should be allowed to join. See e.g., Harris v. Vector Mktg. Corp., 2010 WL 1998768 (N.D. Cal. May 18, 2010) (order granting conditional certification and finding the mailing of a reminder notice to be appropriate); Oliver v. Aegis Commc'ns Group, Inc., 2008 WL 7483891, at *4 (N.D. Tex. Oct. 30, 2008) (order granting conditional certification and allowing plaintiffs' counsel to send subsequent notices during the notice period).

---

[8] The Johnson Order outlining the procedure to follow in carrying out notice is attached as Ex. E.

Defendant suffers no prejudice by ensuring putative class members receive timely notice, giving them a fair opportunity to join the case in a timely manner. There is no cost to Defendant and no delay to the disposition of this matter if putative class members are reminded of the deadline to join. Simply put, reminder letters should be permitted because they are a sensible efficient way of informing recipients of the notice of the approaching deadline.

## CONCLUSION

Having previously decided numerous conditional certification motions, this Court is well-versed on standard applied at the first step of the § 216(b) similarly situated analysis. Through his Complaint, and supporting declarations, Plaintiff has easily established a "colorable basis" for his claim that there is a group of technicians who are victims of the same common business plan that was designed to avoid payment of overtime. As such, Plaintiff respectfully requests this Court to: (1) authorize this case to proceed as a collective action for purposes of notice and discovery; 2) order Defendant to identify all satellite technicians who performed work for Multiband through a contracting company during the applicable statutory period; and (3) authorize the issuance of Plaintiff's proposed notice to be mailed by Plaintiff's counsel to all potential opt-in plaintiffs, require Multiband to post the notice at its field offices, and permit Plaintiff to send subsequent reminder letters.

Dated: November 5, 2010                NICHOLS KASTER, PLLP

s/ Rachhana T. Srey
Paul J. Lukas, MN Bar No. 22084X
Rachhana T. Srey, MN State Bar No. 340133
4600 IDS Center, 80 South 8th Street
Minneapolis, MN  55402
Telephone (612) 256-3200
Fax (612) 215-6870

&

DONATI LAW FIRM, LLP

William B. Ryan, TN Bar # 20269
(*Admitted Pro Hac Vice*)
Bryce Ashby, TN Bar #026179
(*Admitted Pro Hac Vice*)
1545 Union Avenue
Memphis, TN 38104
Telephone: (90) 278-1004
Fax: (901) 278-3111


ATTORNEYS FOR PLAINTIFF AND THOSE SIMILARLY SITUATED